Thank you and good morning. May it please the court. Mr. Penado-Aparicio challenges his sentence on remand because it is harsher than the original sentence imposed under a higher but erroneous guideline range. The district court obviously erred by imposing a harsher sentence on remand because on the record there is no new objective evidence that the court considered which would rebut a presumption of vindictiveness. And that error affected his substantial rights and is serious enough to warrant correction. The government agrees that the sentence on remand is harsher than the original and that a presumption of vindictiveness therefore attaches. The question is whether or not this record has the type of objective new evidence that rebuts that presumption. It does not. We know from this court's precedent in Resendez-Mendez that in order to rebut a presumption of vindictiveness, the court needs to be able to articulate new objective evidence which would justify a harsher sentence on remand. But in this case, the court considered the same pre-sentence report, the same trial evidence, the same arguments by both parties. The only new thing that happened was that Mr. Penado-Aparicio succeeded in his first appeal. That is not sufficient in order to rebut the his allocution in the remand where he characterizes his prior crimes as mistakes. It is nearly identical to the allocution he provided in the original sentence where he also apologized for his criminal history as mistakes. Consequently, we don't have the new objective evidence to rebut a sentence a year longer than was originally imposed under a higher but erroneous guideline. There was no objection below, correct, to raising the vindictiveness argument. So you acknowledge that we're viewing this under plain error? I do. I think that I am stuck with plain error because there was no official objection. But I think what is interesting in this record is that what the contemporaneous objection rule seeks to prevent or encourage that a court consider the issue at hand. This record is a little bit different because the court did consider that what it imposed 60 months and ran it consecutive to the order of revocation. The court says, I don't know what happened there. Parties then identify for the court what happened. Parties identified that in the order of revocation, the court imposed 24 months and ran a contract relationship. So on the record, we have the court becoming aware that in changing the relationship from concurrent to consecutive, that ultimately, it was imposing a longer sentence. And it is clearly established law in this district, thanks to Resendez-Mendez, that in order to rebut a presumption that attaches, there needs to be new objective evidence that the court considers and articulates. You may well be right in terms of, you know, the contemporaneous objection. And normally we say, well, that alerts the court. If there's a problem, judge has a chance to fix it, etc. But it's striking. It may or may not also make a difference in what we do with the case. But when it shifted from concurrent to consecutive, it's hard for me to see what trial counsel was thinking. So my question is, you know, there was a strategic reason for not objecting to the consecutive sentence, which obviously made it long. As I said, it may, at the end of the day, not make a difference, depending on if you prevail on the plain error. But it just seemed beyond the other things you argue in your brief, when it went from concurrent to consecutive, that would have triggered some kind of alert to the judge, which arguably might have fixed the whole thing then. Excuse me, we wouldn't be here now. So was there a strategic reason? If not, you can just, you know, say not. That's more of a curiosity question for me. I'm aware of none and can think of no good strategy for not objecting. Okay, all right. Let me ask if the revocation sentence here was imposed in a separate, unrelated matter. So should it count toward the total sentence that was imposed on remand, since there were two different proceedings? The court takes an aggregate approach to the sentence. So we have law that a revocation is a order in the original proceeding, making it a The interesting twist of this case is that what the district court does is essentially open up and modify that separate unappealed order. So if you look at the docket in these separate cases, we have two final but conflicting orders. And I do, I do raise as a second problem, is that by changing the nature of the relationship in the sentence on remand, the court, in essence, is altering an unappealed order in a proceeding where the court first contemplated what the nature of those, the nature of the relationship of what those two sentences should be. And that is equally problematic in this case. All right. I'd like to return to the issue of plain error because we do have Rule 52B for a reason. As I mentioned, I can't speak to what trial counsel was thinking. But the problem with sandbagging as it is typically raised has been more a theoretical discussion by the Supreme Court that it has dismissed than a realistic practical problem. And I think that when we speak to what counsel does or does not do, we lose sight of the fact that this is a consequence borne by the defendant in the shape of excessive imprisonment. And- I mean, your point, your point is well taken, but I'm just old school. You know, the judge was obviously vexed because she had to do this all over. You know, she's flustered and all of that kind of stuff. And that can happen. And so it just strikes me odd, unless somebody had written it out the rule book, if you say, pause, your honor, we object, we don't understand your ruling, but we object. It does have more than just a cosmetic of bringing the judge's attention. Oops, you know, I've done consecutive versus conservative. So if the judge is want to correct it there, then we wouldn't be here now. So I'm just saying to me, it's not a cosmetic deal to object when there's a basis for it, even if the judge keeps moving. But we're here. She's emotional. She's upset about it being there. She says all this stuff. So arguably she's not focused. Anyway, that's just, I hear you. But to me, objecting brings to the attention of, you know, the judge there. And I'd say the same thing for Ms. Blatt on the other side, you know, same deal. Judges don't like to get in trouble and expect lawyers to point out, you know, are you sure you want to do this? And there's a respectful way to do that. But anyway, keep going. Well, I certainly can't speak to any emotion of district court. But what I can do reflect that if we look at the record on 50, I'm sorry, 554 and 55, that's really where she imposes a sentence on remand and gives an explanation. She says, you know, I'm going to run this consecutive. I'm not real sure what happened to the revocation of supervised release. Then it's pointed out to her that on revocation, it was 24 months and concurrent. And the court says, and it would have been concurrent at that sentence I gave before, but it's not going to be concurrent now. On page 556. So now it's going to run consecutive to the 24 months, not concurrent. We have record evidence that it's very intentional that she's running a 60 month sentence on remand to 24 months, totaling to 84 months, a year longer than the original sentence under a substantially higher, but erroneous guideline range. So I have to believe that the court intentionally did it, but that runs directly in conflict with this court's precedent, let alone Supreme Court precedent from Pierce, but this court's precedent in Resendez-Mendez that clearly articulates what a judge needs to do in order to impose a harsher sentence on remand. And with this record, we don't have the type of evidence that this court recommends be present in order to rebut that presumption of vindictiveness. So I agree that it is annoying at best or worse, depending on your position for a trial counsel to fail to object, but we still have a defendant who was sentenced to a year longer in prison when there's no new evidence to afford any explanation for why that would be, other than winning on appeal in the first instance. And that's the sort of conduct that this court and Supreme Court has expressed deep concern in as not only affecting the individual in the particular case, but creating a chilling effect on every defendant thereafter in exercising their right to appeal. So assuming arguendo that you're able to persuade us that the presumption has not been rebutted, are we mandated by our case law to send the case back to a different judge? Or, in other words, are our hands tied? If we send it back, must we necessarily direct that it go to a different judge? Or are there other ameliorative ways that in the remand, it would go back to the same judge? I think this court has several options. I think in the interest of judicial economy and the relief crafted in Resendez-Mendez, I actually think this court could simply vacate the order of the consecutive relationship, leaving the 60 months in place. It restores the relationship originally contemplated in the separate revocation. I also think that an appropriate remedy would be to remand to a different judge, simply based on the statements made in this record about the court's heartburn for having to hear it again. So I think that there are several options. I think the simplest is to simply vacate the consecutive relationship, leaving all else the same. I also think an appropriate remedy would be to vacate and remand to a different judge. I have not run across, to answer your specific question, that the court must do that. But I do think in the interest of judicial economy and fairness, either simply vacating the consecutive relationship or vacating and remanding to a different judge would be appropriate in this case on this record. What about your option that we would vacate the consecutive order without avoid any additional remand? Right. If we would vacate the consecutive order so that it would be concurrent, like the original order in that case, would there be a need to remand at all? I do not believe so. Do you have any case authorities saying that? I mean, I know for judicial economy, it makes more sense. Um, in Resendez-Mendez, the court did not issue an additional remand. It simply vacated a harsher sentence and reimposed the original. I think that simply vacating the consecutive relationship because the court chose a new sentence under a different guideline would be appropriate in Peelermaine for this case. All right. Thank you. We have your opening. You've preserved some rebuttal. Ms. Blatt, you're up now, ma'am. Okay. Sorry. Good morning. May it please the court and counsel, Meryl Blatt for the United States' appellee in this matter. I first want to acknowledge that the government's brief incorrectly states that the defendant carries the burden to rebut the peer's presumption, correctly stated the government has the burden, and we acknowledge that. That said, there are two points that I'd like to try and cover today. The first is that the only peer's issue before this court is whether its presumption can be rebutted. And the record here raises a reasonable inference that it can. The second is that the mandate... What is the new evidence that came out after the appeal that warrants a higher sentence? Okay. So if we do look at the record at 551 to 552, there's a conversation with the district court and Panotto, which contrary to what Ms. Davidson has just argued, is quite different from that which occurred at the original sentencing. Because here, for the first time, the district court hears that Panotto has not only refused to acknowledge the instant offense, even as a criminal act, but also that his other crimes were essentially not his fault. And that conversation takes place immediately after the court had confirmed that Panotto was asking for a sentence that fell within the same range of the offense whose term of supervised release he violated by committing the instant offense. And the court then details his very in a way that was never discussed at the original sentencing, where the defense actually argued for a reduced sentencing range, a downward departure to 51 to 63 months. And here I would ask the court to compare... I don't understand what you mean it wasn't discussed. I mean, the criminal histories in every PSR, it's along with the offense conduct, those are the two main factors in this. I mean, you're saying the district court didn't know what the criminal history was the first time? No, it's not that the district court didn't know the criminal history, but the district court had no idea of Panotto's attitude toward his own prior convictions. And that is directly related to the 3553A analysis, which the district court does have to do, and which the district court in its statement of reasons in this case said it was relying upon to increase the sentence. But the district court never said because of your colloquy at this new hearing, I'm really concerned. And so under, you know, looking at the nature and the history of the defendant under 3553, I mean, you're just gleaning all this. The court never says it, does she? Well, I think those are all fair inferences that can be drawn from this record, precisely because the court did say that, did detail the criminal history in the way that it did. And also that it was concerned that the newly calculated sentencing range was too low. And the reason why it was concerned was because the defendant had committed the instant offense while he was on supervised release for the present offense. I mean- But you've acknowledged that the you're arguing to us that you can satisfy that burden through stringing together inferences. I mean, that doesn't seem consistent in North Carolina versus Pierce. The court said the presumption can be rebutted by objective information in the record, supporting the harsher sentence in the record. As Judge Costa says, the same criminal history. It's not like saying, well, initially the person acknowledged their culpability for the instant crime and now it's backing off. You're saying not because of the instant crime, but because of stuff in the prior criminal history. I mean, that seems to me to even string it even more of an end. I know you got to make an argument, but that seems to not really give the government much of a burden if all you need to do is string together some inferences to rebut a presumption where the case law clearly says objective in the record. And we have other cases, more, where we look at the record and you see it there and to do it. But in the absence of Judge Costa, the judge specifically saying, well, your allocution just bought you consecutive sentences. How does that square with the government carrying its burden? That seems like it's putting a burden on us to read and glean together inferences, not a burden that the government has to point to something in the record. Well, we would still maintain that the evidence here that the district court heard with regard to the, um, uh, with regard to the, um, Panotto's attitude toward his criminal, toward his criminal activity. This is not just- his attitude about the prior criminal activity justify the judge having an attitude so she gives him consecutive sentences. Is that what you're saying? I mean, she had attitude. She vexed all over the place at you, at everybody. I mean, come on. She has an attitude, clearly. I mean, you don't need an inference for that. So how do we get from her attitude about having to do it to stringing together inferences that says you, the government, rebut the presumption by looking at his attitude about prior offenses, but we can ignore her attitude about the sentence? Well, it's quite clear in the record that the, that the court said, uh, I'm upset with the lawyers and I am upset with the court, this court, um, about what happened on remand. There is nothing in the record that says that this sentence is being imposed because she's upset that Panotto, uh, actually succeeded on appeal. There's nothing in the record about that. Um, the, the, the record, the, the evidence about whether or not, um, uh, Panotto's attitude was different is, is very- But she does a 180. She goes from consecutive to concurrent based on the same deal. Well, did you handle it? No, you handled appeals. So somebody else was the AUSA in there, right? Yes. Ah, you happily say not you because you do appeals. I got it. I remember you do appeals. The point I'm saying, the judge was vexed at the lawyers. We get that, but the judge could just chew the lawyers out, you know, and that's that. Well, okay. And, uh, but that doesn't mean that she bears, uh, a malevolent animus toward the defendant at all. Um, and in fact, um, there's nothing in Pierce, nothing in Pierce that requires the district court to ignore previously heard evidence as well. It's not, but Pierce says it's got to be objective in the record. It says that the court of appeals can read the transcript and figure out the objective evidence. You're right. Perhaps she could have taken all that into account. And if she had iterated that as the reason, then it may have been like a lot of these cases we get where we say, okay, the judge has sufficiently put objectively in the record the reasons for it. And even though it is a year more, we say the record says we've got several cases like that, another one that I wrote where the defendant argued more, but the judge put the reason we got the one where judge Norman black was just good. He was upset with the court of appeals because we sent it back, but we affirmed the sentence because we said he put his reasons there. He was still upset and said the court of appeal got it wrong, but that's the case. So I'm not Bush to you is to distinguish this case from those cases where we have said the presumption is rebutted because of objective evidence in the record or the district court statements of reasons why versus some where there is no such, and we're left to infer inferences as to why a year longer sentence. Well, clearly the record here indicates that the district court did not think that the 60 month sentence that it did impose was good enough. We still maintain that the colloquy with regard to the, what the defendant said with regard to his attitude toward his prior convictions was very compelling for the district court. All right, let me ask you this. We got your argument. What's your best case, the best case for the government that this case slides right in there that we moved down the road? I say that the best case is long scheme. And the reason why I say that is because von stein really discusses why plain error is particularly difficult in these situations because without a contemporaneous objection, courts are robbed of what von stein calls the background of understanding that the district court's reasoning could provide to this court. There is, it also rejects the notion that defendants should be afraid of making such objections. I mean, von stein, which was an en bas court itself says vindictiveness appear disappears after resentencing, which is what says their defendants like panado should have nothing further to fear and nothing to lose by objecting to the sentence. That's at page 10, 90 of von stein. Finally, I mean, the relief that panado is seeking here is for a new judgment to be fully vacated and not for removal of the consecutive sentence that was their original claim for relief. And before you move on to that, just to follow up on Judge Stewart's question. Yes. What is the best case where our court said we can infer reasons why the court might have wanted a higher sentence on remand? And that's in that that rebutted the presumption, as opposed to something that district court actually said to justify the higher sentence? Well, from a reverse perspective, I would say, resend is Mendez, because basically what the court did was the court inferred that the judges comments there were too subjective with regard to supporting the extra time that the that the court ultimately imposed. And I would add here that in this case, the criminal judge that case found error, right? I'm getting it wrong. No, it did. It did. What is the case that said no error, a case that said no vindictiveness, because we can infer why there was new evidence that warranted a harsher sentence on remand. I cannot think of one off the top of my head that that is like. So you want you want this one to be it? Well, I do know that this court has never reversed a case on plain error under facts such as this. And yes, our claim is that this is that the same as saying we've never had a case of presumptive vindictiveness that was affirmed based on inference. Based on inference or based on plain error, and what it does say is that the error was not clear and obvious. Let me ask you a practical question. So we have this revocation case that says the sentences run concurrent. And that that judgment is still out there as far as I understand. Now we have the judgment in this case, the main the new case, let's call it that now says they run consecutive. So if you're at the BOP, I think that's where they calculate, you know, actually how much time you're going to serve. You've got two basically conflicting judgments. How does how do they reconcile that? Well, I can't I can say this. First of all, the judgments and sentences change all the time. And this is a temporal series of events that took place in actual logical order. So there's an original judgment, which is silent in the criminal case about anything having to do with the anything having to do with the concurrency or consecutiveness of the original judgment. Then the revocation sentence is imposed. Then the criminal judgment is entirely vacated by this court, which which is why there's no violation of the mandate rule, because there was no no judgment by the time it got back to the court on remand. And then the court imposes a new judgment, which says, OK, in this judgment, I'm going to make this judgment consecutive to the revocation judgment that has already been imposed. And BOP, yes, BOP does look at judgments in in the aggregate. And I doubt that they've had any problem with it. But if the court would permit me to supplement the record with the BOP records to see what they've done, if the court is interested, I'm happy to do that. What's your take on counsel opposite secondary positions? Let's assume that we hold that even with the plain error standard, that presumption has not been rebutted by objective evidence. And we're discussing, you know, relief. The counsel opposite seemed to acknowledge that as opposed to, vacating and sending it back for re-sentencing by a new judge, that we would have the plenary authority to just vacate the consecutive nature and put it back to square one. And then, you know, everybody wouldn't have to be in place again. I know that's not what you're acknowledged. I mean, you don't want to happen. I'm just asking you if we were to get to that place from the government standpoint, would that work as opposed to, I think we've got a single judge set up. So if we assign it to somebody else, it's got to be in another division and all that, I guess. But anyway, what's your response to that? Could you hear me? No, no, no. I did hear you. I'm just thinking. I think in this circumstance, you know, the court, the government's position would be to leave that to the discretion of this court in terms of what it wants to do with the judgment. Does the court have the plenary power to rescind the consecutive nature of the judgment? I suppose it does. I mean, it does. But I think that in this case, it would be, vacating the judgment would be unwarranted. The criminal judgment would actually, in a strange way, create kind of a conflict between Pierce and the mandate rule itself. Because there was no original judgment here. This court's mandate to the district court was to vacate that judgment entirely. And plenary resentencing was appropriate here. I realize that the court is not happy about the way the evidence, what we believe to be the newly discovered, so to speak, evidence came in through the court. But I think that there is a fair inference that can be drawn from both the district court's and the kind of sentence that it imposed as to why it was concerned that a greater sentence should be imposed. Yeah. Well, my question wasn't meant to move you off of your, you know, position. I understand. And I certainly didn't want you to interpret my question as getting you to acknowledge or concede, you know, that we ought to do anything other than affirm from your standpoint. So I'm not urging it. I'm just saying, assuming arguendo, if we were to get to that space, the government has to be as concerned as we are that everything is done correctly. And so we don't want to complicate an already complex matter by doing something that, I don't want to say illegal, but, you know, creates more issues, especially the point Judge Costa has raised, which I didn't focus on, about the duality of these, you know, revocations and that kind of stuff. So on the one hand, if the cleanest shot, assuming we get there, were to say, we don't think the presumption is rebutted, vacate, remand, re-sentencing new judge. And then, you know, it's a do-over versus we think we're doing something efficient and just say vacate consecutive, but then there are these unintended consequences of doing that. So I was just asking the government for a, you know, from the standpoint, you'll still be the one in there trying to explain all this. So this is just your shot to make sure we don't mess up. If taking the assumptions as you have given them, it would appear to me that, that eliminating the consecutive sentence, the consecutive nature of the judgment would be the cleanest way to do it. All right. Thank you. Canda is always appreciated. You know that. You're welcome, sir. All right. Well, you're about out of time. All right. Any final words? Or we have your argument, I believe. Okay. Request affirmance. Yes. Okay. All right. Thank you so much. All right. We're back to you, Ms. Davidson. Any rebuttal you have? You have five minutes. Thank you. I'll start with what's easy and practical first. I agree with Ms. Blatt that Resendez-Mendez is the best case from the circuit to control the resolution matter. And Judge Costa, to answer your practical question, unfortunately, with a bit of practicality, the BOP guidance is that it basically tries to define the intent of the district court judge in interpreting the relationship of the judgments. I don't know specifically how it goes about doing that. However, I did look up the inmate locator yesterday, and it has Mr. Panetta-Aparicio's projected release date as July 2022. He gets credit from entering prison from June 2016. So it indicates that, in fact, BOP is interpreting the new consecutive relationship on remand to trump the order of revocation. Of course, if you look up the revocation case on PACER, it says that the order runs concurrent to the new illegal reentry. So we certainly know that, practically speaking, he is under a longer term of imprisonment right now. I think speaking also to the revocation and the order of logical progression of how sentences come to be, while this court vacated the original sentence in the illegal reentry case, basically to start again, start with the correctly calculated guideline and select the proper sentence under the 3553A factors, it is not the case that it's a brand new sentencing in a brand new case. When we have a sentence imposed on remand, there are parameters that are fixed in a way that a new case doesn't have. If we look at, practically speaking, how these cases often go, you've got the new illegal reentry that's quickly followed by the separate revocation. In this case, it was the revocation case where the district court was able to contemplate what that relationship is and decided in that case to impose a concurrent relationship. A sentence on remand, even though it starts with a new guideline and a new sentencing process, still goes back and fits into that bigger picture in a way that if there were a subsequent conviction where a judge is able to contemplate a relationship for the first time, that doesn't happen here. And that's why we have this internal conflict that has set up between the judgments. The district court's rejection of Mr. Panato's, Aparicio's sincerity is the same type of subjective discrediting that the court's permitted to do in crafting the sentence, but it is not sufficient under Resendez-Mendez to justify a harsher sentence. It is not objective fact occurring after the original sentence that this court says rebuts that presumption. And I also want to point out that in the original sentencing, the government took a long time to discuss with the district court the same criminal history that was before it on remand. And the court certainly took their criminal history for crafting a sentence. And on remand, it was doing so looking at a new 30 to 37-month guideline range. And the with that change of relationship to consecutive, that not only made it a harsher sentence on remand, but it set up the conflict. And so we ask that, as I mentioned, a more narrow remedy of vacating the consecutive relationship or simply vacating a remanding to a different judge. And thank you very much for giving us this safe forum. All right. We have your argument. All right. Thank you, Ms. Blatt and Ms. Davidson. Appreciate your argument on behalf of your clients. That concludes the argument in the case. It'll be